IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

USF INSURANCE COMPANY,

               Plaintiff,

v.                                      CIVIL ACTION NO.  2:09-cv-01258

STOWERS TRUCKING, LLC, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

This is an insurance coverage dispute, in which USF Insurance Company ("USF") has filed a lawsuit seeking declaratory relief.  Specifically, USF seeks a declaration that it has no duty to defend or indemnify certain of its insureds — Stowers Trucking, LLC ("Stowers"), Odell Processing, Inc. ("Odell"), and Laurel Creek Co., Inc. ("Laurel Creek") (collectively, "the defendants") — in a separate state court tort suit.  Stowers has filed a motion to dismiss, requesting that this court exercise its discretion to decline to hear this case.  As explained below, the Motion to Dismiss [Docket 6] is **DENIED**.

**I.  Background**

    *A.  Facts*

The facts underlying this federal court action are the subject of a pending lawsuit in the Circuit Court of Mingo County, West Virginia.  *Lambert v. Stowers Trucking, LLC*, Civ. Act. No. 09-C-274 (the "*Lambert* case").  In 2003, Stowers and Laurel Creek entered into a hauling and delivery agreement, under which Stowers agreed to haul coal to various Laurel Creek coal preparation plants, including a plant operated by Odell.  In 2004, USF issued a commercial general

liability insurance policy (the "policy") to Stowers, with Laurel Creek named as an "additional insured."[1]

On September 4, 2007, Wilson Lambert, a purported Stowers employee, was performing maintenance on a Stowers truck. While on Odell plant premises, Lambert was allegedly under the truck when the truck fell on him. He was injured as a result. In 2007, Lambert filed a state court lawsuit against Stowers, Odell, and Laurel Creek, asserting claims for negligence and deliberate intent. After Lambert filed a state court complaint, Stowers, Odell and Laurel Creek requested that USF defend and indemnify them under the policy.

In a November 2009 letter, USF agreed to defend Odell and Laurel Creek, but reserved a decision on indemnification to those companies. USF declined to either defend or indemnify Stowers. USF based its decision on three exclusions in the policy.

First, USF asserted that the policy's automobile exclusion precluded coverage. That exclusion provides that the policy does not cover damages for "'[b]odily injury' . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured." (Policy 4.) Second, USF argued that the employer's liability exclusion barred coverage. That exclusion provides that the policy does not cover "'[b]odily injury' to an 'employee' . . . of the insured arising out of and in the course of employment by or service to the insured for which the insured may be held liable as an employer or in any other capacity," and that it is not required to indemnify any insured for "[a]ny obligation of the insured to indemnify or contribute with another because of damages arising out of 'bodily injury' to an 'employee' of the

---

[1]  The policy is found at Docket 1-2.

insured." (*Id.* at 2.)  Third, USF contended that the policy excludes coverage for punitive damages (the "punitive damages exclusion").

### B. Procedural History

USF filed its Complaint in this court on November 17, 2010, seeking declaratory relief only. The Complaint asserts three counts.  Counts One and Two seek declarations that the policy's automobile and employer's liability exclusions, respectively, preclude coverage to Stowers, Odell, and Laurel Creek.  Count Three requests a declaration that the employer's liability exclusion also bars "coverage to Stowers for any claims of indemnity or contribution that have been or could be asserted against Stowers by Odell and/or Laurel Creek."  (Compl. ¶ 22.)  On December 7, 2009, the defendants filed a third-party complaint against USF in the *Lambert* case, seeking adjudication of the same issues raised by USF's Complaint.

On January 13, 2010, the defendants filed the Motion to Dismiss, contending that the court should decline to exercise jurisdiction over USF's complaint.  USF responded on January 26, 2010, and the defendants replied on February 4, 2010.

The court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## II.  Discussion

### A.  The Declaratory Judgment Act

The Declaratory Judgment Act of 1934 , 28 U.S.C. § 2201, permits a federal court to issue a declaratory judgment in a "case or controversy within [the court's] jurisdiction."   Such relief "is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th

Cir. 2004) (internal quotation marks omitted).  The Act authorizes a cause of action only; the federal court must be satisfied that it possesses an independent basis for subject matter jurisdiction.

Whether a federal court chooses to hear a suit for declaratory relief only is, however, a matter of discretion.   28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may declare* the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (emphasis added)).   And when there is parallel state court litigation concerning the same subject matter, a district court must consider whether the controversy "can better be settled in the proceeding pending in the state court." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).  A district court may not, however, decline to entertain a declaratory judgment action on a "whim or personal disinclination." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962).

The defendants contend that USF's declaratory judgment suit should be dismissed, because of the pending parallel litigation in state court in the *Lambert* case.  The defendants assert that "much of the evidence that the state court will have to consider [in the *Lambert* case] would have to be re-considered by this Court in deciding the coverage issues [in the federal declaratory judgment action]."  (Mem. Supp. Mot. Dismiss 6.)  Thus, they insist, federal-state comity and efficiency would be best served by having issues of tort liability and insurance coverage decided by a single court.

A primary consideration for a district court in any declaratory judgment action is "whether its resolution of the declaratory judgment action will settle all aspects of the legal controversy." *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992).  Complications arise, however, when there

is parallel litigation pending in state court involving the same subject matter as the federal action, as there is in this case. Unfortunately, precedent governing this issue in this circuit is hardly a model of clarity.

In *Mitcheson*, Judge Wilkinson, writing for a divided panel, implied that the existence of parallel state court litigation alone could justify a federal court's decision to dismiss a declaratory judgment action. *See* 955 F.2d at 238-41. In that case, a boy who had developed elevated blood lead levels after living in a house with lead paint filed state law tort claims against his landlord in state court. The landlord sought indemnity and defense payments from his insurance company under a policy. The insurance company declined the claim and then filed a federal declaratory judgment action. The district court heard the action and ruled in favor of the insurance company. The landlord appealed, and the court of appeals reversed.

*Mitcheson* cautioned that efficiency and comity are central concerns to a district court in deciding whether to hear a declaratory-judgment action involving important state law issues that are contested in pending state court litigation. The district court to rule on uncertain factual issues crucial to the state court action, which entangled the federal and state court systems. *Mitcheson*, 955 F.2d at 239. "To have sustained the suit for declaratory judgment," the court concluded, "would have been to drag this essentially local litigation into the federal courts and to defeat the jurisdiction of the state courts over it merely because one of the parties to the litigation happened to have indemnity insurance in a foreign insurance company." *Id.* at 240-41.

Two years later, however, the Fourth Circuit backed away from *Mitcheson*'s dicta regarding the weight due parallel state court litigation. The court explained that, even if state law controls all of the issues in a declaratory judgment action, "that alone provides no reason for declining to

-5-

exercise federal jurisdiction." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 378 (4th Cir. 1994), *abrogated on other grounds by Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257-58 (4th Cir. 1996).[2]   The court explained that "[i]n analogous situations in which a federal court possesses discretionary power to abstain from deciding state-law questions otherwise properly within its jurisdiction, that discretion may be exercised only when the questions of state law involved are difficult, complex, or unsettled." *Id.*

In *Nautilus*, the court of appeals identified several factors that should guide district courts on whether to exercise their jurisdiction over declaratory judgment suits in the face of parallel state court litigation.  First, a district court must consider "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts." *Id.* at 376.  Second, the court should determine "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending." *Id.*  Third, the court must assess "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law.'" *Id.*  And finally, the district court must decide "whether the declaratory judgment action is being used merely as a device for procedural fencing — that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable." *Id.* (internal quotation marks and alterations omitted).

---

[2]   In *Nautilus*, the Fourth Circuit remarked that its standard of review of a district court's decision to refuse to exercise jurisdiction over a declaratory judgment suit was "essentially de novo." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (internal quotation marks omitted), *abrogated on other grounds by Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257-58 (4th Cir. 1996). A year later, the Supreme Court decided *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), which held that abuse of discretion was the standard of review.  Save for this aspect of its holding, *Nautilus* remains good law.  *Centennial Life*, 88 F.3d at 257.

As a result of these conflicting precedents, district courts in this circuit have differed on when dismissal in such a situation is appropriate. *Compare Beach Cover Assocs. v. United States Fire Co.*, 903 F. Supp. 959, 961 (D.S.C. 1995) ("[T]he existence of parallel state proceedings would appear in itself to be 'good reason' for this court to exercise its discretion to decline jurisdiction under the Act") *with NGM Ins. Co. v. Evans*, 642 F. Supp. 2d 511, 515 (W.D.N.C. 2009) ("The fact that all issues of insurance coverage raised are governed by state substantive law is not sufficient to decline exercising federal jurisdiction."). Helpfully, in 2001, a judge in this district published a decision examining the relevant precedent on this issue. *First Fin. Ins. Co. v. Crossroads Lounge, Inc.*, 140 F. Supp. 2d 686 (S.D. W. Va. 2001). In that decision, Judge Chambers effectively synthesized the relevant precedent, concluded that *Nautilus* remains good law, and ruled that the existence of parallel state court litigation alone does not require dismissal of a federal declaratory judgment action.

I agree with Judge Chamber's analysis in *First Financial* and conclude that the existence of parallel state litigation is not itself enough to compel dismissal and remand. Instead, the four *Nautilus* factors shall guide my decision in this case. *See also Westfield Ins. Co. v. Goodall*, 2009 WL 113061 at *2 (S.D. W. Va. Jan. 16, 2009) (unpublished) (applying four-part *Nautilus* test); *AT&T Corp. v. McKamish, Inc.*, 2006 WL 1805852 at *1-2 (S.D. W. Va. June 28, 2006) (unpublished) (same).

B. *Applying the Nautilus Test*

1. *state interest*

On the first *Nautilus* factor, the defendants contend that West Virginia has a particularly strong interest in this case, because all of the issues to be resolved in this declaratory judgment

action depend on the interpretation of state law.  (Mem. Supp. Mot. Dismiss 7 (citing *Mitcheson*, 955 F.2d at 238).)  While this is certainly a consideration, it is not determinative.

Even in actions involving only issues of state law, the state's interests are less when the state law issues are not "difficult" or "unsettled." *Nautilus*, 15 F.3d at 378; *see also First Financial*, 140 F. Supp. 2d at 695.  Here, while West Virginia has an interest in seeing that its citizens' contractual rights are enforced, USF's declaratory judgment action presents questions of contract interpretation that do not appear to require complex or novel issues of state law.  Like all contracts, insurance policies generally hinge on state contract law. Indeed, were this the only consideration, most, if not all, declaratory judgment actions regarding insurance coverage disputes would be dismissed from federal court.  Such a *per se* bar would run contrary to Fourth Circuit precedent and practice.  *Cf. Nautilus*, 15 F.3d at 375-76 ("[W]e have frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, even in advance of a judgment against the insured on the underlying claim for which coverage is sought." (collecting cases)).  Thus, while there are important state interests involved, those issues, standing alone, are not of the nature that would require this court to dismiss the declaratory judgment action.

### 2.  efficiency

Regarding the second *Nautilus* factor, the defendants argue that "the issues raised in [this action] can be more efficiently resolved as part of the pending state suit."  They contend that "[t]he evidence that will be presented to adjudicate Lambert's claims will essentially be the same as that presented to determine whether Odell and Laurel should be afforded coverage or whether the exclusions relied upon by USF are applicable and exclude coverage."  (Mem. Supp. Mot. Dismiss 7.)  To a certain extent, the defendants are correct.  Were this court to dismiss this case, the state

court could adjudicate both the issues of fact involved in the tort suit, as well as issues of insurance coverage raised by the defendants' third-party complaint.

Nevertheless, having this court adjudicate the declaratory judgment suit is not tantamount to reinventing the wheel.  Issues of law and fact in Lambert's tort state court suit will revolve around Lambert's injury — legal issues of duties of care and factual issues of breach, causation, and injury. In contrast, issues in USF federal declaratory judgment action, while involving issues of fact from Lambert's injury, deal primarily with issues of contract interpretation; namely, whether certain exclusions in the policy preclude recovery by these defendants under the policy.   Only the defendant's newly filed third-party state court complaint involves issues that directly overlap with this federal action.   Therefore, I harbor little concern that efficiency will be hamstrung by adjudicating this case in federal court.

### 3. *federalism*

Next, the defendants assert that USF's declaratory judgment action will cause unnecessary entanglement with the pending state court action, because "most of the facts needed to adjudicate [the federal declaratory judgment action] and the underlying state suit are the same."  (Mem. Supp. Mot. Dismiss 8.)   The court is not concerned that federal-state comity will suffer should this case be decided in federal court.  As explained above, while there may be some factual overlap between this federal action and Lambert's state tort case, each sovereign will be deciding separate issues that should have little influence on the other.    It is thus not apparent that this federal action will "frustrate the orderly progress of state court proceedings."  *Mitcheson*, 955 F.2d at 239 (internal quotation marks omitted).  Therefore, the third *Nautilus* factor is not implicated.

### 4. *"procedural fencing"*

Finally, the defendants assert that the fourth *Nautilus* factor favors dismissal because the declaratory judgment action "is a blatant attempt at procedural fencing." (Mem. Supp. Mot. Dismiss 8.)  This assertion fails in light of the procedural history of this case.  Procedural fencing generally occurs when a party is seeking to have a federal court decide issues that are already pending in state court in order to get a more favorable ruling.  *See Westfield*, 2009 WL 113061, at *3; *AT&T*, 2006 WL 1805852, at *3.  Here, however, USF was not a party to the *Lambert* case suit, and no coverage issues were pending in state court when USF filed its federal complaint. It has therefore not initiated a race for res judicata.  If anything, *the defendants* have created the impression of procedural fencing by filing a mirror image third-party complaint in state court after USF had filed its federal complaint and then seeking dismissal of this action on the basis of parallel state court litigation.  Therefore, the fourth *Nautilus* factor weighs against dismissal.

## III.  Conclusion

Having examined the facts of this case through the lens of controlling precedent, the Motion to Dismiss [Docket 6] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          February 11, 2010

Joseph R. Goodwin, Chief Judge